The New-York Life Insurance & Trust Co. agt. Abraham Cutler and others.

---

## SUPREME COURT.

THE NEW-YORK LIFE INSURANCE & TRUST COMPANY agt. ABRAHAM CUTLER AND WIFE, GEORGE M'LANE AND WIFE, PETER YOUNG, AND TWENTY-THREE OTHERS.

*A writ of assistance* may be issued *ex parte* without service of notice for the order. (*So held in 8 How. Pr. R. 35.*)

A decree of foreclosure which directs that the purchaser or purchasers at the sale be let into the possession of the mortgaged premises sold, and that any of the parties in the cause who may be in possession of said premises, and any person who, since the commencement of the suit, has come in possession under them, or either of them, deliver possession, &c., does not authorize the removal of a tenant in possession, who became such after the commencement of the suit, where such tenant holds under a person not a party to the suit who was lawfully in possession under a claim hostile to that derived from the mortgage; although the tenant was made a party to the suit for the purpose of reaching an interest, in right of his wife, in other premises in the mortgage of which he was in possession, and which possession he had delivered up in pursuance of the decree.

That is, the tenant having obeyed and satisfied the requirements of the decree, *quoad* its effect upon *him*, was afterward at liberty to go into possession of the other mortgaged premises under a person who was not a party to the foreclosure suit, in the actual possession, as owner, claiming title in hostility to that derived through the mortgage foreclosure, without being liable to be turned out by virtue of the decree which had expended its force with regard to him.

A landlord, not a party to a foreclosure suit, and claiming title in hostility to that derived through the foreclosure, is not bound by the decree, although his tenant, who is made a party, surrenders possession of the premises to him after the decree.

*Yates Special Term, November,* 1853. Motion to set aside writ of assistance, &c.—On the 29th day of November, 1832,

the defendant, Abraham Cutler, executed his bond to the plaintiffs, conditioned to pay them $4,000 in the manner therein mentioned, and at the same time said Cutler and his wife executed their mortgage to the plaintiffs upon two certain farms therein described, one of which was situated in the town of Lodi, Seneca county, and the other in Hector, Tompkins county, as security for the payment of the moneys mentioned in said bond.

The above action was brought in the late court of chancery to foreclose this mortgage, and a decree of foreclosure entered therein before the assistant vice-chancellor of the first circuit, dated September 30th, 1846. The decree confirms the report of the master, which bears date June 24th, 1846, whereby, among other things, the sum of $5,733.66 is reported to be due to the plaintiffs on the bond and mortgage,—directs the mortgaged premises sold, or so much as should be necessary to raise the amount due, with interest, costs, &c.; and among other things contains the following provision: "And it is further ordered and decreed that the purchaser or purchasers of the said mortgaged premises at such sale be let into the possession thereof; and that any of the parties in this cause, who may be in possession of the said premises, or the parts thereof which shall be sold, and any person who, since the commencement of this suit, has come in possession under them or either of them, deliver possession thereof to such purchaser or purchasers, on production of the master's deed for such premises, and a certified copy of the order confirming the report of the sale, after such order has become absolute." All the defendants, excepting Abraham Cutler and wife, were made parties upon an allegation in the bill of complaint, that they had or claimed some interest in the mortgaged premises, or some part thereof as purchasers, mortgagees or otherwise, subsequent to the execution of the said mortgage. An appeal from the above decree was dismissed by the supreme court at general term in the sixth district in July, 1849. On the 13th of February, 1852, the Lodi farm, described in the mortgage and in the decree, was duly sold by virtue of the decree by the sheriff of Seneca county to the plaintiffs, and conveyed to them by deed

accordingly by such sheriff. This deed was duly acknowledged on the 14th of February, 1852, and recorded in the office of the clerk of Seneca county on the same day. On the 12th day of April, 1852, the plaintiffs (the grantees in the last deed) conveyed the same premises to Elijah Baker by deed of that date, which was duly acknowledged on the 19th of the same month, and on the 21st of the same month duly recorded in the same clerk's office. On the 21st of February, 1853, Baker and wife conveyed the same premises to Daniel Tyler by deed of that date, which was duly acknowledged on the 22d of the same month, and recorded in the same clerk's office, March 7th, 1853.

On the 20th of October, 1853, an affidavit was made by William H. Gibbs on behalf of said Tyler, showing that George M'Lane, one of the defendants in the foreclosure suit, was then in the possession and occupancy of the said Lodi farm; that on the same day (October 20th, 1853) the deponent, in company with Tyler, went on the premises, and after exhibiting to said M'Lane a certified copy of the decree, a certified copy of an order confirming the sheriff's sale, and the several deeds above mentioned, duly and regularly acknowledged and recorded, demanded of said M'Lane, with all due formality, the possession of the said premises, (the said Lodi farm,) and every part thereof, and that said M'Lane refused to give up possession, &c. The same affidavit contained a statement of Tyler's title as above set forth.

On this affidavit a motion was made at a special term held in Yates county before Mr. Justice SELDEN, on the third Monday of October, 1853, ex parte without notice to any one, for a writ of assistance, &c., which motion was granted, and an order entered accordingly.

A writ of assistance was thereupon issued, by virtue of which the sheriff of Seneca county, on the 25th day of October, 1853, removed the said M'Lane, and put the said Tyler in possession of the said Lodi farm.

A motion is now made in behalf of the said M'Lane for an order setting aside the writ of assistance and the order upon

which it was issued, and to restore the possession to M'Lane. This motion is founded on various affidavits, tending to show that Andrew J. Cutler, who was not made a party to the foreclosure suit, being in possession of the Lodi farm, and claiming to be the owner thereof, by an agreement in writing, dated March 19th, 1853, leased the same for one year to the said M'Lane, upon certain terms therein mentioned, and that M'Lane entered in pursuance thereof, and continued in possession of said farm, cultivating the same until he was removed by the sheriff by virtue of the writ of possession as before stated: that the said M'Lane was made a party-defendant in the foreclosure suit by reason only of an interest which he claimed in right of his wife as an heir-at-law of Noadiah Shannon deceased, in that part of the mortgaged premises consisting of the said farm in Hector, Tompkins county; and that after the said decree of foreclosure was made, and in the spring of 1852, being informed that Baker had purchased said land or the decree, and at the request of Baker and those claiming under him, he surrendered the possession of said premises, and removed therefrom, and has not since claimed any possession or right of possession, or been in the constructive or actual possession of the said farm in Hector, since which time said Baker and those claiming under him have been in the actual and peaceable possession thereof: that after said M'Lane surrendered the possession of the farm in Hector, he resided in that town with his family until he went into possession of the farm in Lodi, under the lease from Andrew J. Cutler as before stated, and which is the only possession which he has ever had or claimed of the said Lodi farm.

Affidavits were read on this motion with a view of showing Andrew J. Cutler's right to the Lodi farm, and his possession of the same, which are referred to in the opinion of the court, as far as is necessary for the proper understanding thereof.

O. HASTINGS & M. S. NEWTON, *for the motion.*

E. VAN BUREN & WM. H. GIBBS, *opposed.*

WELLES, Justice.   One ground of the motion is, that the

order for the writ of assistance was obtained *ex parte*, and without notice. That question was settled in the case of the New-York Life Insurance & Trust Co. agt. Rand, (8 *How. Pr. R.* 35,) affirmed on appeal to the general term, (*Id.* 352,) where it was held that notice of the application was unnecessary. In this case, the order appears to me to have been in all respects regular. Every thing was shown in the affidavit upon which it was granted required by the law or the practice.

But there is another question, which is raised upon the affidavits produced on the present motion, of much more grave importance. It is shown by the affidavit of Peter Young, one of the defendants in the foreclosure suit, that about fifty-nine years before the date of the affidavit, he purchased the premises in question (the Lodi farm) of one Peter Ten Brook, and shortly afterward moved on to it with his family, where he and they continued to reside, without interruption or change of actual possession, until about five years since, when Henry D. B. Cutler showed him a deed for the premises from John I. Young to said H. D. B. Cutler and others, and requested the deponent to leave said premises, which he accordingly did, and said Cutler took possession. The same affidavit states that about thirty years since, the said premises were sold by the sheriff of Seneca county by virtue of an execution issued upon a judgment in the supreme court, against him the said Peter Young and the said Abraham Cutler, at which sale Henry D. Barto was the purchaser: that shortly afterward Barto sold the same premises to Jacob I. Young and John I. Young of the state of New-Jersey: that shortly after that, the said Jacob I. & John I. Young executed to the deponent (the said Peter Young) a lease in writing for the farm, upon which he continued to reside, and pay rent to the lessors, until the said Jacob I. Young released his interest therein to said John I. Young, after which he paid the rent to the said John I. Young as long as he occupied the farm. This affidavit is corroborated by that of his daughter Catherine Cutler, the wife of Abraham Cutler. The affidavit of Andrew J. Cutler states that he was one of the grantees in the deed from John I. Young

to H. D. B. Cutler and others, which bore date May 22, 1847, for the premises in question : that he purchased the interest of H. D. B. Cutler in said land, and took possession of the same by virtue of his interest, about January 20th, 1849, and about the 10th of February, 1850, leased the farm to one Arthur Broderick for the term of three years, and that since that time he has purchased the interest of the remaining grantees in the said deed from John I. Young, making the entire title in said farm ; and that in March, 1853, he leased the said farm to the said George M'Lane for one year, who entered and held until removed as before stated.

It is urged, in opposition to the motion, that as M'Lane was a party to the foreclosure, he was liable to be removed under the authority of the decree. This is answered as I think conclusively, as far as respects this motion, by the fact that after the decree, and purchase by Baker, he surrendered all the possession he had of the mortgaged premises. After that, he had the same right to acquire and retain the possession as if he had not been a party to the foreclosure suit. There is no reason why he should not, as he had obeyed the decree and submitted himself to its requirements ; and if he afterward found a person, who was not a party to the foreclosure suit, in the actual possession as owner, claiming title in hostility to the title through the foreclosure, he was at liberty, in my judgment, to go into possession under such person, without being liable to be turned out by virtue of the decree of foreclosure, which had already expended its force with regard to him. It cannot be deemed to have the effect of a perpetual injunction upon him in relation to the possession, without reference to subsequently acquired rights, but must be restricted to such rights as the decree is presumed to have settled. In this case M'Lane was in possession when the writ of assistance was executed, as tenant to Andrew J. Cutler, who was not a party to the foreclosure suit, and the question, I think, must be regarded in the same light as if Andrew J. Cutler had been in possession previously, and was the person who had been removed, and was now making the present motion. The moving affi-

davits show,—and the contrary is not proved by the opposing affidavits,—that Henry D. B. Cutler received possession of the premises in question about five years ago from Peter Young, one of the defendants in the foreclosure suit, who, it appears, had, since long before the date of the mortgage, occupied them as tenant to the persons from whom the said Andrew J. Cutler claimed to derive his title. The latter, therefore, stands inde pendent of the foreclosure suit or the decree made therein, and cannot be dispossessed in this summary manner, not being bound or affected by the decree.

I have considered the question whether, as H. D. B. Cutler received the possession of the premises from Peter Young, one of the parties to the foreclosure suit, and since the commence-ment of that suit, he and his grantee, Andrew J. Cutler, should not be regarded as standing in privity with the said Peter Young, and thus concluded by the decree, inasmuch as this is a question of possession merely. If A. J. Cutler had derived his title from Peter Young, or, in the language of the decree, had come into possession under him, after the commencement of the suit, I think this would undoubtedly have been the con-sequence. But that is not the case; on the contrary, he de-rived his claim from persons to whom Peter Young had sus-tained the relation of tenant a long time before the mort-gage was given. His relation was that of assignee of the landlords of Peter Young, and the possession of the latter was their possession, and an attornment by him to any other person than his landlords, pending that relation, would have been void.

It is of importance to look at the nature of the possession of Peter Young, which he surrendered to H. D. B. Cutler. If it had been a possession in his own right, he being a party to the decree, any person taking possession from or under him would have been bound by the decree and liable to be removed the same as Peter Young himself. But his possession, being as tenant to the individual to whom he surrendered, the surrender was merely an act of loyalty to his landlord, who, not being a party to the suit, was not, I think, bound by the decree. Of course, I do not assume to decide or intimate who has the title or best

claim to the premises. That question must be determined by an action. All I intend to decide in this connection is, that Andrew J. Cutler, under the circumstances, is not bound by the decree; and that M'Lane, although a party to the suit for the foreclosure of the mortgage, having satisfied the judgment therein, *quoad* its effect upon him, was at liberty to enter under A. J. Cutler, who was lawfully in possession under a claim hostile to that derived from the mortgage.

In this case, so far from H. D. B. or A. J. Cutler coming into possession under Peter Young, he was in possession under their grantors.

Upon the whole, I think the motion should be granted to vacate the order for the writ of assistance, and the writ be set aside, and the possession be restored to M'Lane.